# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

State of South Carolina, Appellant,

v.

Kathryn Martin Key, Respondent.

Appellate Case No. 2017-001013

---

Appeal from Greenville County
Edward W. Miller, Circuit Court Judge

---

Opinion No. 27971
Heard November 20, 2019 – Filed May 13, 2020

---

## VACATED AND REMANDED

---

Attorney General Alan McCrory Wilson and Assistant
Attorney General Joshua Abraham Edwards, both of
Columbia; and Solicitor William Walter Wilkins III, of
Greenville, for Appellant.

James H. Price III and Elizabeth Powers Price, both of
Price Law Firm P.A., of Greenville; and J. Falkner Wilkes,
of Greenville, for Respondent.

---

**JUSTICE JAMES:**  Kathryn Martin Key was convicted in the summary court of
driving under the influence (DUI).  Her conviction was based upon the testing of her
blood, which was drawn without a warrant while she was unconscious.  The circuit
court reversed and remanded, finding the summary court should have suppressed
evidence of Key's blood alcohol concentration because the State did not obtain a

warrant.  The State appealed to the court of appeals, and the appeal was transferred to this Court.

While the State's appeal was pending in this Court, the United States Supreme Court decided *Mitchell v. Wisconsin*, 139 S. Ct. 2525 (2019).  In *Mitchell*, the Supreme Court held for the first time that, generally, law enforcement is permitted to draw the blood of an unconscious DUI suspect without a search warrant pursuant to the exigent circumstances exception to the warrant requirement.  However, the Supreme Court acknowledged the possibility of an "unusual" case presenting an exception to this new general rule.  The *Mitchell* Court determined the defendant should be given the opportunity to establish the applicability of the exception to the general rule and remanded the case to the trial court for that purpose.

We have carefully considered the *Mitchell* holding and conclude we will not impose upon a defendant the burden of establishing the absence of exigent circumstances.  We hold the burden of establishing the existence of exigent circumstances remains upon the State.  The exigent circumstances issue in this case was not ruled upon by the summary court; therefore, we remand this case to the summary court for further proceedings consistent with this opinion.

## BACKGROUND

At approximately 8:45 a.m. on December 10, 2015, Key was driving a motor vehicle on Muddy Ford Road in Greenville County.  She drove across the center-line, crashed her vehicle into the driver's side of an oncoming vehicle, and then drove off the road and struck a tree.  When South Carolina State Trooper Aaron Campbell arrived on scene at 8:57 a.m., Key was on a stretcher and was being loaded into an ambulance.  Trooper Campbell approached to ask Key for her name and phone number, but one of the paramedics stopped him and said, "Man, she needs to go [to the hospital]."  The ambulance departed, so Trooper Campbell was unable to question Key at the scene.

Trooper Campbell stayed at the scene for over an hour to investigate the accident.  He photographed the scene, interviewed the driver of the other vehicle, and completed an accident report.  Trooper Campbell recovered an almost-empty mini bottle of Jack Daniel's liquor from the glove compartment of Key's vehicle. "Wet residue" in the bottle led Trooper Campbell to believe the liquor had been "freshly consumed."  Trooper Campbell completed his investigation and drove to Greenville Memorial Hospital to charge Key with DUI and open container.

Trooper Campbell located Key in the emergency room trauma bay. She was unconscious and was intubated due to the severity of her injuries. Trooper Campbell arrested the unconscious Key for DUI at 10:35 a.m. and read her implied consent rights[1] to her at 10:36 a.m. Without seeking a search warrant, Trooper Campbell asked a nurse to draw Key's blood. Her blood was drawn at 10:45 a.m. (approximately two hours after the accident), and testing revealed her blood alcohol concentration (BAC) was .213%. Key then spent five days in the intensive care unit.

Key moved pre-trial to have the evidence of her BAC suppressed. She argued Trooper Campbell's failure to obtain a warrant violated the Fourth Amendment to the United States Constitution and Article I, section 10 of the South Carolina Constitution. Key contended there were no exigent circumstances to excuse the State's failure to obtain a warrant. She also contended South Carolina's implied consent statute is unconstitutional. Key did not argue Trooper Campbell lacked probable cause to suspect she had been driving under the influence.

In response, the State argued the implied consent statute is constitutional and was followed by Trooper Campbell. The State asserted the blood was legally drawn because Key statutorily consented to the blood draw by operating a motor vehicle and by not withdrawing her implied consent. The State noted, "Judge, this is not a case where we have to look for exigent circumstances. We are not looking for an exception to the warrant requirement." The summary court denied Key's motion to suppress.

---

[1] *See* S.C. Code Ann. § 56-5-2950(A) (2018) (providing a person arrested for DUI is considered to have given consent to certain chemical tests for the purpose of determining the presence of drugs or alcohol); *id.* (providing a blood test may be conducted if a breath test cannot be administered and stating the blood sample must be collected within three hours of the arrest); § 56-5-2950(B)(1) (requiring the person suspected of DUI to be given a written copy and verbally informed that "the person does not have to take the test or give the samples, but that the person's privilege to drive must be suspended or denied for at least six months with the option of ending the suspension if the person enrolls in the Ignition Interlock Device Program, if the person refuses to submit to the test, and that the person's refusal may be used against the person in court"); § 56-5-2950(H) ("A person who is unconscious or otherwise in a condition rendering the person incapable of refusal is considered to be informed and not to have withdrawn the consent provided by subsection (A) of this section.").

The case proceeded to a bench trial before the summary court. Trooper Campbell testified about his investigation of the accident and confirmed he did not seek a warrant before directing a nurse to draw Key's blood at the hospital. The parties stipulated there was a magistrate on duty in Greenville County at the time Key was arrested and her blood drawn. On cross-examination, Trooper Campbell acknowledged the on-duty magistrate was only three miles from the hospital on the morning of the accident. Trooper Campbell confirmed Key was unconscious when he read Key's implied consent rights to her and when the nurse drew her blood. A SLED toxicologist testified Key's BAC was .213%.

The summary court found Key guilty of DUI, imposed a fine, and sentenced her to the five days she "served" while in intensive care. Key appealed her conviction to the circuit court. In addition to the consent argument it presented to the summary court, the State argued to the circuit court that the record was replete with evidence of exigent circumstances, including the wreck itself, Trooper Campbell staying behind at the scene to interview the accident victim and conduct his investigation, and Key's unconscious state. In a written order, the circuit court reversed Key's conviction and remanded the case for a new trial, ruling the blood alcohol evidence was obtained pursuant to an unlawful search and seizure in violation of both the Fourth Amendment to the United States Constitution and the South Carolina Constitution. The circuit court rejected the State's position that the implied consent statute permitted a warrantless blood draw but did not address the State's exigent circumstances argument. The State moved for reconsideration and again noted its argument of exigent circumstances. The circuit court denied the State's motion without addressing the exigent circumstances issue.

The State appealed to the court of appeals, and the appeal was transferred to this Court pursuant to Rules 203(d)(1)(A)(ii) and 204(a) of the South Carolina Appellate Court Rules.

## DISCUSSION

The State argues the circuit court erred in reversing Key's conviction and remanding for a new trial. In its brief to this Court, the State argued the circuit court erred in finding a warrant was required to draw Key's blood because (1) exigent circumstances were present and (2) Key validly consented under the implied consent statute and did not revoke her consent. During oral argument, the State abandoned its implied consent argument and proceeded solely under its exigent circumstances argument. Therefore, we will address only the latter issue.

### A. Preservation

Key argues the State's exigent circumstances argument is not preserved for appellate review because the argument was not raised to or ruled upon by the summary court. We disagree.

Before the summary court, the State argued a warrant was unnecessary because Key, by driving a motor vehicle, consented to having her blood drawn under the implied consent statute. The State argued there was no need to address the issue of exigent circumstances because the consent issue was dispositive. Since the State prevailed on the issue of consent, it was unnecessary for the State to present additional arguments to the summary court as to why a warrant was not required. *See I'On, L.L.C. v. Town of Mt. Pleasant*, 338 S.C. 406, 419, 526 S.E.2d 716, 723 (2000) ("It would be inefficient and pointless to require a respondent to return to the judge and ask for a ruling on other arguments to preserve them for appellate review. It also could violate the principle that a court usually should refrain from deciding unnecessary questions."). Nothing in the trial record indicates the State conceded to the summary court that there were no exigent circumstances.

When Key appealed to the circuit court, the State argued as an additional sustaining ground that the record "is replete with exigent circumstances," and cited Key's unconscious state as one of those circumstances. *See I'On*, 338 S.C. at 419-20, 526 S.E.2d at 723 ("[A] respondent—the 'winner' in the lower court—may raise on appeal any additional reasons the appellate court should affirm the lower court's ruling, regardless of whether those reasons have been presented to or ruled on by the lower court. . . . The basis for respondent's additional sustaining grounds must appear in the record on appeal[.]"). Here, the basis for the additional sustaining ground appears in the record on appeal. Because the State raised the issue of exigent circumstances to the circuit court, raised the issue again in its motion for reconsideration, and raised the issue on appeal to this Court, the exigent circumstances issue is preserved for review.

### B. Exigent Circumstances

The Fourth Amendment to the United States Constitution provides:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause,

supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV.

It is settled that the collection of a person's blood for BAC testing is a search and a seizure under the Fourth Amendment. *See Schmerber v. California*, 384 U.S. 757, 767 (1966); *Birchfield v. North Dakota*, 136 S. Ct. 2160, 2173 (2016). "The Fourth Amendment to the United States Constitution prohibits unreasonable searches and seizures. Evidence seized in violation of the Fourth Amendment must be excluded from trial." *State v. Khingratsaiphon*, 352 S.C. 62, 69, 572 S.E.2d 456, 459 (2002). "Although the text of the Fourth Amendment does not specify when a search warrant must be obtained, this Court has inferred that a warrant must generally be secured." *Kentucky v. King*, 563 U.S. 452, 459 (2011). However, because the touchstone of the Fourth Amendment is reasonableness, the general presumption that a warrant is required may be overcome in certain situations. *Id.* Consent and exigent circumstances are two of the recognized exceptions to the general warrant requirement. *See State v. Brown*, 401 S.C. 82, 89, 736 S.E.2d 263, 266 (2012); *Missouri v. McNeely*, 569 U.S. 141, 148-49 (2013). Most important to the issue before us is the settled principle that "the burden is upon the State to justify a warrantless search." *State v. Peters*, 271 S.C. 498, 501, 248 S.E.2d 475, 477 (1978). At no time has this Court placed the burden on a defendant to establish that an exception to the warrant requirement does <u>not</u> exist.

"The exigent circumstances exception allows a warrantless search when an emergency leaves police insufficient time to seek a warrant." *Birchfield*, 136 S. Ct. at 2173. "It permits, for instance, the warrantless entry of private property when there is a need to provide urgent aid to those inside, when police are in hot pursuit of a fleeing suspect, and when police fear the imminent destruction of evidence." *Id.* "[B]ecause an individual's alcohol level gradually declines soon after he stops drinking, a significant delay in testing will negatively affect the probative value of the results." *McNeely*, 569 U.S. at 152.

The United States Supreme Court has addressed the constitutionality of warrantless blood draws in several DUI cases. *See Schmerber*, 384 U.S. at 770-71 (holding the warrantless blood draw of a DUI suspect was valid because the law enforcement officer, dealing with a car accident, could "reasonably have believed that he was confronted with an emergency, in which the delay necessary to obtain a warrant, under the circumstances, threatened 'the destruction of evidence'"); *McNeely*, 569 U.S. at 165 (holding the determination of whether a warrantless blood draw of a DUI suspect qualifies as an exigent circumstance involves a case-by-case

analysis of the totality of the circumstances and that the natural dissipation of alcohol in the bloodstream alone does not establish a per se exigency); *Birchfield*, 136 S. Ct. at 2184 (holding a lawful search incident to arrest of a DUI suspect permits a warrantless breath test but not a warrantless blood draw).

In *Mitchell*, the United States Supreme Court held the exigent circumstances exception to the warrant requirement "almost always" justifies the warrantless drawing of blood from unconscious DUI suspects. 139 S. Ct. at 2531. Three justices joined Justice Alito's lead opinion. Justice Thomas provided the fifth vote, concurring in the judgment but explaining he would impose an even more expansive rule that the natural metabolization of alcohol in the bloodstream creates an exigent circumstance in <u>every</u> DUI case as soon as law enforcement has probable cause to believe the driver is impaired—"regardless of whether the driver is conscious." *Id.* at 2539 (Thomas, J., concurring).[2]

In *Mitchell*, the Sheboygan, Wisconsin Police Department received a report of a drunk driver, and the responding officer found the defendant wandering on foot around a nearby lake, stumbling and slurring his words. A preliminary breath test revealed his BAC was .24%—triple the Wisconsin legal limit. The defendant was arrested for DUI, and law enforcement drove him to the police station for a more reliable breath test. By the time the squad car reached the station, the defendant was too lethargic to submit to a breath test. The officer decided to take the defendant to a nearby hospital for a blood test, but the defendant lost consciousness by the time they arrived at the hospital. While the defendant was still unconscious, the officer read the defendant his statutory implied consent rights. After hearing no response from the defendant and without obtaining a warrant, the officer asked hospital staff to draw the defendant's blood. The blood was collected ninety minutes after the time of arrest, and testing revealed a BAC of .222%. The defendant moved to suppress

---

[2] *See Marks v. United States*, 430 U.S. 188, 193 (1977) ("When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, 'the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds . . . .'" (quoting *Gregg v. Georgia*, 428 U.S. 153, 169 n.15 (1976))); *King v. Palmer*, 950 F.2d 771, 781 (D.C. Cir. 1991) (en banc) (Silberman, J., concurring) (providing the rule illustrated by *Marks* applies "only when one opinion is a logical subset of other, broader opinions"); *id.* ("In essence, the narrowest opinion must represent a common denominator of the Court's reasoning; it must embody a position implicitly approved by at least five Justices who support the judgment.").

the BAC evidence, arguing the warrantless blood draw violated his Fourth Amendment right against unreasonable searches.

The *Mitchell* plurality explained the dilemma it believed officers would face when presented with an unconscious DUI suspect—"It would force [law enforcement officers] to choose between prioritizing a warrant application, to the detriment of critical health and safety needs, and delaying the warrant application, and thus the BAC test, to the detriment of its evidentiary value and all the compelling interests served by BAC limits." *Id.* at 2538. The plurality emphasized that such a scenario is the very reason the exigency exception exists and concluded exigent circumstances almost always exist when (1) blood alcohol evidence is dissipating and (2) "some other factor creates pressing health, safety, or law enforcement needs that would take priority over a warrant application." *Id.* at 2537. The plurality concluded both conditions are satisfied when a DUI suspect is unconscious and concluded "when a driver is unconscious, the general rule is that a warrant is not needed." *Id*. at 2531. It summarized:

> In such cases, [where the DUI suspect is unconscious and unable to provide a breath test,] the exigent-circumstances rule almost always permits a blood test without a warrant. When a breath test is impossible, enforcement of the drunk-driving laws depends upon the administration of a blood test. And when a police officer encounters an unconscious driver, it is very likely that the driver would be taken to an emergency room and that his blood would be drawn for diagnostic purposes even if the police were not seeking BAC information. In addition, police officers most frequently come upon unconscious drivers when they report to the scene of an accident, and under those circumstances, the officers' many responsibilities—such as attending to other injured drivers or passengers and preventing further accidents— may be incompatible with the procedures that would be required to obtain a warrant. Thus, when a driver is unconscious, the general rule is that a warrant is not needed.

*Id.*

While the Supreme Court concluded the new general rule will "almost always" apply, the Court acknowledged there may be an "unusual case" in which "a defendant would be able to show that his blood would not have been drawn if police had not been seeking BAC information, and that police could not have reasonably judged that a warrant application would interfere with other pressing needs or duties." *Id.* at 2539 (emphasis added). Because the defendant did not have the

opportunity to make such a showing, the Court remanded the case to the Wisconsin state court to allow the defendant to attempt to make the showing. *Id.*

The *Mitchell* plurality closed with the following:

When police have probable cause to believe a person has committed a drunk-driving offense and the driver's unconsciousness or stupor requires him to be taken to the hospital or similar facility before police have a reasonable opportunity to administer a standard evidentiary breath test, they may almost always order a warrantless blood test to measure the driver's BAC without offending the Fourth Amendment. We do not rule out the possibility that in an unusual case a defendant would be able to show that his blood would not have been drawn if police had not been seeking BAC information, and that police could not have reasonably judged that a warrant application would interfere with other pressing needs or duties.

*Id.*

The people have the right under the Fourth Amendment "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . and no Warrants shall issue, but upon probable cause[.]" We cannot sponsor the notion of requiring a defendant to prove that this right—a right she already possesses—exists in any given case. We must therefore part company with the *Mitchell* Court, as we will not impose upon a defendant the burden of establishing the absence of exigent circumstances. We have consistently held the prosecution has the sole burden of proving the existence of an exception to the warrant requirement. *See, e.g.*, *State v. Bruce*, 412 S.C. 504, 510, 772 S.E.2d 753, 756 (2015); *State v. Robinson*, 410 S.C. 519, 530, 765 S.E.2d 564, 570 (2014); *State v. Gamble*, 405 S.C. 409, 416, 747 S.E.2d 784, 787 (2013); *State v. Weaver*, 374 S.C. 313, 319-20, 649 S.E.2d 479, 482 (2007); *State v. Brown*, 289 S.C. 581, 587, 347 S.E.2d 882, 885 (1986); *State v. Huggins*, 275 S.C. 229, 232, 269 S.E.2d 334, 335 (1980). Likewise, the United States Supreme Court and all state and lower federal courts have consistently held the State bears the burden of establishing exigent circumstances. *See, e.g.*, *Welsh v. Wisconsin*, 466 U.S. 740, 750 (1984) (stating "the burden is on the government to demonstrate exigent circumstances");[3] *McDonald v.*

---

[3] *See also Welsh*, 466 U.S. at 749-50 (emphasis added) (internal citation omitted) ("Prior decisions of this Court . . . have emphasized that exceptions to the warrant requirement are 'few in number and carefully delineated,' and that *the police bear a heavy burden when attempting to demonstrate an urgent need that might justify*

*United States*, 335 U.S. 451, 456 (1948) ("We cannot be true to that constitutional requirement and excuse the absence of a search warrant without a showing by those who seek exemption from the constitutional mandate that the exigencies of the situation made that course imperative."); *United States v. McGee*, 736 F.3d 263, 269 (4th Cir. 2013) ("The government bears the burden of proof in justifying a warrantless search or seizure.").[4]

## CONCLUSION

In any given case, the unconsciousness of a DUI suspect might indeed be a significant factor—or even the determining factor—in the analysis of the exigent circumstances issue. However, in any given case, unconsciousness might not be a significant factor. In this case, the question of the existence of exigent circumstances was not litigated in the trial court. We therefore vacate the circuit court's reversal of Key's conviction, and we remand this case to the summary court for a determination of whether the exigent circumstances exception to the warrant requirement applies. The State shall have the burden of establishing the applicability of the exception, and the summary court shall base its ruling upon its view of the totality of the circumstances. Those circumstances may well include the very circumstances emphasized by the *Mitchell* Court.

If the summary court determines the exception applies, Key's conviction shall stand. If the summary court determines the exception does not apply, Key will receive a new trial with the BAC result suppressed. We express no opinion at this

---

*warrantless searches* or arrests. Indeed, the Court has recognized only a few such emergency conditions[.]" (citing *Schmerber*, 384 U.S. at 770-71)).

[4] In light of our holding, we need not address Key's argument that Article I, section 10 of the South Carolina Constitution requires exclusion of evidence of her BAC. Article I, section 10 largely mirrors the Fourth Amendment but adds the express prohibition against unreasonable invasions of privacy: "The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures *and unreasonable invasions of privacy* shall not be violated . . . ." S.C. Const. art. I, § 10 (emphasis added). "The South Carolina Constitution, with an express right to privacy provision included in the article prohibiting unreasonable searches and seizures, favors an interpretation offering a higher level of privacy protection than the Fourth Amendment." *State v. Forrester*, 343 S.C. 637, 645, 541 S.E.2d 837, 841 (2001).

stage as to whether the exigent circumstances exception does or does not apply in this case.

**VACATED AND REMANDED.**

**KITTREDGE, Acting Chief Justice, HEARN, FEW, JJ., and Acting Justice Thomas E. Huff, concur.**